IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE NOVASTAR FINANCIAL<br>SECURITIES LITIGATION | )<br>)<br>)<br>) | Case No. 04-0330-CV-W-ODS |

ORDER AND OPINION (1) DENYING DEFENDANTS' MOTION TO DISMISS,
(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS'
REQUEST FOR JUDICIAL NOTICE; AND
(3) LIFTING THE STAY AND DIRECTING PARTIES TO FILE PROPOSED PLAN

Pending are Defendants' Motion to Dismiss Consolidated Class Action Complaint Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (Doc. # 95) and Defendants' Request for Judicial Notice in Support of Motion to Dismiss (Doc. # 96). For the following reasons, the motion to dismiss is denied, and the request for judicial notice is granted in part and denied in part.

## I. BACKGROUND

The above-captioned action was brought against Defendants NovaStar Financial, Inc. ("NovaStar") and certain NovaStar officers and directors by purchasers of NovaStar common stock and sellers of NovaStar put options seeking damages for violations of the Securities Exchange Act of 1934. NovaStar, a Kansas City, Missouri-based corporation, is a specialty finance company that originates, invests in and services residential nonconforming mortgage loans - loans that do not meet the criteria for conventional loans to be owned or guaranteed by government-sponsored entities. Consol. Compl. ¶ 4.

In the Consolidated Complaint, Plaintiffs allege that between October 29, 2003, and April 8, 2004 (the "class period"), Defendants violated section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange

Commission in the following manner: (1) the company repeatedly reassured the market that it was fully complying with all applicable regulations and made no mention of any regulatory infractions; (2) the company violated the laws in two states and was subsequently fined but these violations were not disclosed to public investors; and (3) the company's growth through branch office expansions was overstated because the offices were illegally conducting business. Plaintiffs further allege that due to Defendants' false and misleading statements, NovaStar's stock price traded at inflated levels, increasing to as high as $67.00 per share on March 22, 2004, during which time the total transactions in NovaStar's securities exceeded $107 million.

On January 14, 2005, Defendants filed their Motion to Dismiss the Consolidated Complaint, contending that Plaintiffs have failed to state a claim upon which relief may be granted, and a Request for Judicial Notice in Support of its Motion to Dismiss.

## II. REQUEST FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of the documents attached to their Motion to Dismiss, which include reports filed by NovaStar with the Securities and Exchange Commission (SEC), press releases, two reports from stock analysts and information specifically referred to by Plaintiffs in the Consolidated Complaint. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice of SEC filings is proper if Defendants are not offering the filings for the truth of the matters asserted therein. See Kushner v. Beverly Enter., Inc., 317 F.3d 820, 824 (8th Cir. 2003) (citing Florida State Bd. of Admin. v. Green Tree, 270 F.3d 645, 663 (8th Cir. 2001)). Plaintiff does not object to the Court taking judicial notice of the SEC filings so long as the Court

2

follows the ruling in Kushner. The Court takes judicial notice of the SEC filings (Exhibit Nos. 1, 2, 4, 6, 7, 8, 9, 10, 11, 12, 13, 14, 17, 18, 19, 20 and 21) because Defendants are not offering them for the truth of the matters asserted therein.

Defendants also seek judicial notice of monthly loan production reports (Exhibit Nos. 3 and 5) and two analysts' reports (Exhibit Nos. 15 and 16) because these documents were referenced or relied upon in the Consolidated Complaint. According to Defendants, NovaStar began posting its monthly loan production reports on its website near the beginning of the alleged class period and continued to do so throughout the remainder of the class period. These monthly loan production reports set forth the number of operating NovaStar-affiliated branch offices and NovaStar's monthly loan production. Defendants contend that the content of these documents is capable of accurate and ready determination. While Plaintiffs allege that NovaStar misrepresented the number of its branches on its website, this does not allow the Court to look beyond the Consolidated Complaint at four documents that may have been placed on NovaStar's website when the facts contained within these documents are incapable of accurate and ready determination. For this reason, the Court denies Defendants' request to take judicial notice of its NovaStar's monthly loan production reports and its analysts' reports.

### III. MOTION TO DISMISS

A. Standard

A motion to dismiss for failure to state a claim should be granted when it appears that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In ruling on a motion to dismiss, the Court is required to view the facts alleged in the complaint in the light most favorable to the plaintiff. The Court is

3

limited to a review of the Complaint; the only items outside the Complaint that may be considered without converting the motion to one seeking relief pursuant to Rule 56 of the Federal Rules of Civil Procedure are (1) exhibits attached to the Complaint, and (2) materials necessarily embraced by the Complaint. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003). Because the Court has taken judicial notice of NovaStar's filing with the SEC, it will also consider those documents.

The Private Securities Litigation Reform Act of 1995 ("PSLRA") "dictates a modified analysis due to its special heightened pleading rules." Kushner, 317 F.3d at 824. The purpose of the heightened pleading standard was set forth to eliminate abusive securities litigation and put an end to the practice of pleading "fraud by hindsight." In re Navarre Corp. Secs. Litig., 299 F.3d 735, 742 (8th Cir. 2003) (quoting In re Vantive Corp. Secs. Litig., 283 F.3d 1079, 1084-85 (9th Cir. 2002)). The PSLRA requires plaintiffs "to specify each misleading statement or omission and specify why the statement or omission was misleading." Id. at 326 (citing 15 U.S.C. § 78u-4(b)(1)); see also In re Navarre Corp., 299 F.3d at 741-42. The complaint must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The allegations must collectively establish a strong inference of the required state of mind. Kushner, 317 F.3d at 826 (citation omitted). Finally, the Court must "disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements." Id. at 824 (quoting Green Tree, 270 F.3d at 660).

B. Discussion

*(1) Section 10(b) of the Securities Exchange Act and Rule 10b-5 Claims*

To allege a cause of action involving publicly traded securities and purchases under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission, the following elements must be established: (1) a

4

material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1631 (2005); 15 U.S.C. §§ 78j(b) and 78t; 17 C.F.R. § 240.10b-5. Defendants contend that Plaintiffs have failed to state a claim upon which relief can be granted because (1) Plaintiffs' claims fail for lack of materiality; (2) Plaintiffs have failed to allege falsity and scienter with requisite particularity; and (3) NovaStar had no duty to disclosure compliance issues and, therefore, did not violate the SEC regulations by not disclosing its failure to comply with two states' regulations.

### a. Materiality

Defendants argue that Plaintiffs' claims fail because they have not alleged that Defendants made misrepresentations that were *material*. "A fact is deemed material if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as substantially altering the mix of information available to the investor." Gebhardt v. Conagra Foods, Inc., 335 F.3d 824, 829 (8th Cir. 2003) (citing Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 (8th Cir. 1997)). The question of whether a fact is material depends on the company's particular circumstances. Id. The Court must look at the information from a reasonable investor's perspective at the time of the alleged misrepresentation, not from the reasonable investor's perspective looking back at how the events unfolded. Id. at 831. Furthermore, in order to take the question of materiality away from a jury, "the circumstances must make it obvious why a reasonable investor would not be concerned about the facts misrepresented." Id. at 830 (emphasis added).

Defendants' statements were made at various points in time during the Massachusetts' and Nevada's investigations. Generally speaking, Plaintiffs allege Defendants' statements failed to disclose any of the contemporaneous facts and

5

circumstances surrounding the states' enforcement efforts. Perhaps most significantly, Plaintiffs allege that statements made while operations in these two states were halted failed to disclose this fact.

In May 2003, the Massachusetts Commissioner of Banks, Mortgage Lenders and Mortgage Broker Licensing sent NovaStar, via certified mail, a letter informing the company that allegations regarding substantial non-compliance had been registered against NovaStar. Cons. Compl. ¶ 72. Two days after the class period began, the Massachusetts Division of Banks ordered NovaStar to immediately cease mortgage broker and mortgage lender operations in Massachusetts because of serious regulatory violations. Cons. Compl. ¶ 79. NovaStar's branch network in Massachusetts was shut down on October 31, 2003, and remained closed for two months. Cons. Compl. ¶ 80. Eventually, NovaStar agreed to pay a fine of $22,500.00 in satisfaction of an administrative penalty to Massachusetts. Cons. Compl. ¶¶ 81-83.

From July 2003 through February 2004, NovaStar illegally conducted its operations in the State of Nevada. Cons. Compl. ¶ 73. In February 2004, the Commissioner of Nevada's Mortgage Lending Division directed NovaStar to cease all activities in Nevada. Cons. Compl. ¶ 85. Nevada, according to NovaStar's SEC filings, was its fifth largest market in 2001 and 2002, accounting for approximately $130 million worth of loans collateralizing mortgage securities. Cons. Compl. ¶ 86. Subsequently, NovaStar agreed to pay a fine of $80,000.00. Plaintiffs claim that Defendants never disclosed to public investors its violations of Massachusetts' and Nevada's laws during the class period. Moreover, Defendants made statements about its regulatory practices during the times that it was directed to cease operations in these states. Cons. Compl. ¶ 101, 105, 111, 114-15.

In addition, NovaStar, in its filings with the SEC, continually stressed the importance of complying with federal and state regulations and noted the failure to comply with said regulations could adversely affect its operations and/or profitability. For

6

Case 4:04-cv-00330-ODS   Document 118   Filed 05/12/05   Page 6 of 13

example, on March 5, 2004, NovaStar filed its 2003 Form 10-K with the SEC, which stated as follows:

> *Our failure to comply with federal, state or local regulation of mortgage lending, of broker compensation programs or of our local branch operations could adversely affect our operations and profitability.* As a mortgage lender, we are subject to many laws and regulations. Any failure to comply with these rules and their interpretations or with any future interpretations or judicial decisions could harm our profitability or cause a change in the way we do business.

Cons. Compl. ¶¶ 64, 136 (italics in original). Similar statements were also made on November 6, 2003, in a Prospectus Supplement filed with the SEC; on November 18, 2003, in a Form S-3 Registration Statement filed with the SEC; on December 9, 2003, in an amendment to Form S-3 filed with the SEC; and, on January 16, 2002, in a Prospectus Supplement filed with the SEC. Cons. Compl. ¶¶ 101, 105, 111, 114-15.

Defendants argue that Plaintiffs have failed to allege any facts showing that the licensing issued in two of the thirty-nine states in which NovaStar operated had any adverse affect on NovaStar's loan production.[1] However, when considering whether a misrepresentation or omission has occurred, the Court must not look at the effect of Defendants' misrepresentation or omission; rather, the Court must look at whether a reasonable investor would find that the misrepresentation or omission would have substantially altered the information available to him or her at the time it was made or should have been made. Gebhardt, 335 F.3d at 829. Based on the alleged misrepresentations that Defendants made by failing to inform investors about the

---

[1]Defendants also argue that the administrative penalties imposed on NovaStar, which equate to less than one-tenth of one percent of NovaStar's total revenue for the first quarter of 2004, establish that the alleged omission was in fact immaterial. In arguing this point, Defendants cite several cases (including one from the Eighth Circuit); however, almost all of these cases pertain to a company's overstatement of its actual revenues, not a *settlement* between a company and a state for the company's violations of the state's laws. Moreover, Plaintiffs' allegations involve more than the mere failure to disclose payment of a minor fine.

7

investigations and subsequent fines in Massachusetts and Nevada, combined with the filings by NovaStar that stress the importance of complying with state regulations and note the possible effect it may have on the company's operations and profitability, the Court cannot find that the omitted information was so obviously insignificant that it is immaterial as a matter of law. Consequently, the Court finds that there is substantial likelihood that a reasonable investor at that time the alleged misrepresentations were made would have found such misrepresentations to have substantially altered the mix of information available to the investor.

### b. Scienter

Defendants also contend that Plaintiffs' Consolidated Complaint fails to plead facts giving rise to a strong inference of scienter. "In general, inferences of scienter tested under the Reform Act will not survive a motion to dismiss if they are only reasonable inferences - the inferences must be "both reasonable and strong." Kushner, 317 F.2d at 827 (quoting Helwig v. Vencor, Inc., 251 F.3d 540, 551 (6th Cir. 2001)). In Kushner, the Eighth Circuit approvingly noted that other circuits have found that scienter was sufficiently plead where the complaint alleges that the defendants (1) knew facts or had access to information that suggested their public statements were not accurate; (2) engaged in deliberately illegal behavior; (3) benefitted in a concrete personal way from the alleged fraud; or (4) failed to verify information they had a duty to monitor. Id. at 827 (citing Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir.), cert. denied, 531 U.S. 1012 (2000)). The Eighth Circuit has also noted that "scienter may be demonstrated by severe recklessness involving 'highly unreasonable omissions or misrepresentations' amounting to 'an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.'" Kushner, 317 F.3d at 828 (quoting K&S P'ship v. Cont'l Bank, N.A., 952 F.2d 971, 978 (8th Cir. 1991)).

8

*1. Inaccurate Public Statements*

The Consolidated Complaint sets forth numerous public statements made by Defendants during the class period that the investors believe give rise to a strong inference of scienter because the statements were not accurate. Defendants never disclosed its regulatory problems in Nevada or Massachusetts. Cons. Compl. ¶¶ 89, 91, 95, 99, 101, 105, 107, 118, 122, 125, 128, 134. Examples of some of these allegedly inaccurate statements are as follows:

(1) Defendants Hartman and Schwatken denied that NovaStar had any regulatory difficulties anywhere in the country when in fact NovaStar had been contacted by both Nevada and Massachusetts regarding regulatory violations;

(2) NovaStar, on a Form 8-K signed by Defendant Schwatken filed with the SEC on November 6, 2003, included an underwriting agreement that stated there were no legal or government actions, suits or proceedings pending against the company when, just the week before, Massachusetts had suspended NovaStar's activities; and

(3) NovaStar, on a Form 8-K filed with the SEC on December 5, 2003, included an underwriting agreement that claimed NovaStar possessed "all material licenses, certificates, permits or other authorizations issued by government agencies to conduct business" when NovaStar did not have the requisite licenses to conduct business in Nevada or Massachusetts.

Defendants counter that Plaintiffs' claims fail because they cannot set forth an explanation as to why the disputed statement was untrue or misleading when it was made. However, unlike the investors in In re Navarre Corp., the investors in this case have provided particulars about who made the statement, when the statement was made, and demonstrated why the statements were false or misleading at the time they were made. 299 F.3d at 743.

Defendants also argue that its statements about it's success were not misleading

9

or false because the statements never spoke to NovaStar's regulatory record. However, according to the Consolidated Complaint, which the Court is required to view in the light most favorable to Plaintiffs, Defendants knew facts or had access to information at the time the statements were made, which suggest that Defendants' statements were not accurate. See Green Tree, 270 F.3d at 665 (noting that when a defendant publishes statements when it knew facts or had access to information suggesting that the public statements were materially inaccurate, it gives rise to a strong inference of scienter).

*2. Defendants Engaged in Deliberately Illegal Behavior*

Plaintiffs have also alleged that because Defendants engaged in deliberately illegal behavior scienter has been sufficiently pled. The Consolidated Complaint alleges several instances of illegal activity by Defendants. Cons. Compl. ¶¶ 67-69, 72-73, 75-76, 78-80, 82, 85, 87, 149, 153. Such activity can also give rise to an inference of scienter. See Kushner, 317 F.2d at 827.

*3. Defendants Benefitted in a Concrete & Personal Way from Fraud*

In addition, the Consolidated Complaint alleges that two of the three individual Defendants engaged in insider trading in close proximity to the alleged misrepresentations that were out of line with prior trading practices of those individuals. While insider trading, by itself, cannot establish scienter, such transactions can give rise to the required inference of scienter when the insider trades are unusual either in the amount of profit made, the amount of stock traded, the portion of stocks sold, or the number of insiders involved. In re Navarre Corp., 299 F.3d at 747 (citing Green Tree, 270 F.3d at 659.

According to the Consolidated Complaint, none of the individual Defendants purchased NovaStar stock outside of their compensation arrangements during the class period. However, Defendant Schwatken sold 7,500 shares of NovaStar stock (more than

10

thirty percent of his shares at the time) on December 8, 2003, for total proceeds of over $300,000. This sale took place one day before NovaStar filed an amendment to Form S-3 filed with the SEC, which stressed the importance of compliance with regulations. On February 2, 2004 Defendant Anderson sold 100,000 shares of stock (almost fifteen percent of his shares at the time) for total proceeds of more than $5 million. Cons. Compl. ¶ 110, 179-81. This sale took place approximately two weeks after NovaStar filed its Prospectus Supplement with the SEC, which also stressed the importance of compliance with regulations. The fact that these individual Defendants engaged in such stock sales around the time of the allegedly false statements is rather unusual and provides circumstantial evidence of scienter.

In addition to the individual Defendants, NovaStar also allegedly benefitted in a concrete way from the fraud. During the class period, NovaStar engaged in two stock offerings, raising more than $110 million. Cons. Compl. ¶ 168. NovaStar also issued $1.48 billion in Home Equity Loan Asset-Backed Certificates during the class period. Cons. Compl. ¶ 175. Had NovaStar's regulatory problems been made public, it may have jeopardized its sales of these stocks and certificates.

Upon review of the allegedly false or misleading statements made by Defendants, the allegedly illegal behavior in which Defendants engaged, and the benefits allegedly reaped by Defendants, the Court finds that Plaintiffs have sufficiently plead scienter.

### *(c) Duty to Disclose*

Defendants argue that the Consolidated Complaint should be dismissed because NovaStar did not have a duty to disclose its compliance issues because the compliance problems were not material. The Court has already found that there was a substantial likelihood that a reasonable investor at that time the alleged misrepresentations were made would have found such misrepresentations to have substantially altered the mix of information available to the investor and, therefore, such misrepresentations were

11

material. Moreover, "even absent a duty to speak, a party who voluntarily discloses material facts in connection with securities transactions assumes a duty to speak fully and truthfully on those subjects." Kushner, 317 F.3d at 831. Once Defendants began repeatedly assuring the investing public that NovaStar was in full compliance with all applicable regulations and was not aware of any regulatory problems, they assumed a duty. For these reasons, Defendants' argument fails.

### (2) Control Person Claim

Defendants also contend that Plaintiffs' control person claim fails because Plaintiffs failed to plead a primary violation of the securities law. In a controlling person liability claim, the plaintiff must establish (1) the defendant lender participated in (i.e., exercised control over) the operations of the corporation, and (2) the defendant possessed the power to control the specific transaction upon which the primary violation is predicated. Metge v. Baehler, 762 F.2d 621, 629 (8th Cir. 1985). Because the Court has determined that Plaintiffs sufficiently pled claims against Defendants for violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of the Securities Exchange Commission, Defendants' argument is without merit.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiffs have sufficiently pled claims upon which relief may be granted. Thus, Defendants' motion to dismiss is denied, and their request for judicial notice is granted in part and denied in part.

Because there are no further motions pending in this case, the stay, imposed on January 28, 2005, is hereby lifted. A joint proposed scheduling order/discovery plan ("Proposed Plan") shall be filed on or before July 1, 2005. The Proposed Plan shall comply with Local Rules 16.1(d), 16.1(f), 26.1(c) and 26.1(d). The Proposed Plan shall

also state whether the case will be tried to the Court or to a jury and the anticipated length of the trial.  <u>See</u> Local Rule 16.1(f)(5).  In accordance with Local Rule 16.1(d), plaintiffs' counsel shall take the lead in preparing the Proposed Plan.

The Rule 26(f) conference shall take place on or before June 17, 2005.  Counsel are reminded that FRCP 26(a)(1) disclosures must be completed within ten (10) days after the Rule 26(f) conference.  During the Rule 26(f) conference, the parties shall discuss the nature and bases of their claims and defenses and shall discuss the possibilities for a prompt settlement of the case.  Discovery may not commence before the conference is held except under the conditions set forth in FRCP 26(d).

IT IS SO ORDERED.

DATE: May 12, 2005                              /s/ Ortrie D. Smith
                                                                 ORTRIE D. SMITH, JUDGE
                                                                 UNITED STATES DISTRICT COURT