**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE NOVASTAR FINANCIAL, INC. SECURITIES LITIGATION, | ) | Case No. 04-0330-CV-W-ODS |

**DEFENDANTS' SUGGESTIONS IN OPPOSITION TO MOTION FOR CLARIFICATION OF ORDER AND OPINION GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# I. INTRODUCTION

The Court's order granting plaintiffs' motion for class certification defined the class as persons who bought NovaStar common stock during the class period, still held it as of April 8, 2004, and suffered damage as a result of actions by NovaStar. Order and Opinion Granting Plaintiffs' Motion for Class Certification ("Order") at 3.

Plaintiffs now request that the Order be changed – or "clarified" as they put it – to include "put" sellers in the class alongside stock purchasers and to include "in and out" shareholders in the class as well, *i.e.*, persons who sold the stock prior to the end of the class period at what plaintiffs claim was an artificially inflated price.

Defendants oppose plaintiffs' request on three grounds: (1) as shown in defendants' motion for reconsideration (filed on February 20, 2007), no class ***at all*** is properly certified in this case because plaintiffs are unable to use the fraud-on-the-market theory to escape their obligation to plead and prove individual reliance; (2) "in and out" traders do not properly belong in any class because people who both buy and sell at an allegedly inflated price cannot show any loss or damage; and (3) sellers of "put" options cannot show loss causation and are not in any event properly represented by either of the named plaintiffs here.[1]

Plaintiffs argue that in-and-out traders belong in the class because this case involves a number of "partial corrective disclosures" made during the class period. This argument can, in the proper factual setting, make sense. Someone who purchases stock at $10, who sees the price of that stock decline to $8 upon a partial disclosure made in the middle of the class period, and who then sells the stock before the end of the class period could conceivably claim a loss.

---

[1] Defendants fully addressed the "put" issue at pages 30-31 of their June 30, 2006 Suggestions in Opposition to Motion for Class Certification. Rather than re-argue the matter here, we refer the Court to those suggestions. We also note that neither of the named plaintiffs purports to have sold put options.

However, plaintiffs here concede that what they view as "partial disclosures"—a series of newspaper articles revealing the action by Nevada regulators—caused no statistically significant decline in NovaStar's stock price and, indeed, that the four earliest disclosures were followed by modest price ***increases***. Under these circumstances, in-and-out traders can have no claim and, in turn, no place in the class. To expand on the earlier analogy, someone who purchases stock at $10, who sees the price of that stock increase to $12 upon disclosures made in the middle of the class period, and who then sells the stock before a drop in price at the end of the class period has made a ***profit*** and cannot conceivably claim a loss. Similarly, where a claimed "partial disclosure" does not move the stock price in either direction, one who both buys and sells at an allegedly inflated stock price has suffered no loss – the detriment of an inflated purchase price is matched by the benefit of an inflated sale price. This is the clear lesson of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).

Plaintiffs' efforts to use the partial corrective disclosures in a bid to expand the class also highlight a fundamental shortcoming in their case. Defendants established in their certification briefing that one of two things must be true: either NovaStar shares did not trade in an efficient market during the class period or the alleged misrepresentations regarding the regulatory health of NovaStar were not material to investors. Defendants based that showing on several indisputable facts, among them that NovaStar's share price did not increase when NovaStar made its alleged misrepresentations and, more important to the present discussion, that the share price did not *decrease* when news of the Nevada action reached the market through multiple articles published throughout the class period.

Forced to concede that intermediate reports of the Nevada action resulted in no price decrease, but still hoping to rebut defendants' efficiency/materiality argument, plaintiffs' expert

took pains to minimize the import and corrective effect of the intermediate disclosures. Indeed, he essentially admitted their immateriality:

> As Dr. Cox notes, the price of NovaStar common stock did not exhibit any abnormal performance on February 25, 2004, February 26th 2004, February 27, 2004, March 29, 2004, March 30, 2004 or March 31, 2004. ***In the absence of the release of any other new, material information relating to the Company on these dates, one can conclude, at best for Defendants, that news of NovaStar's regulatory settlement (i.e. not the underlying risk associated with the Company's violations) with the state of Nevada was not, on a stand-alone basis, deemed material by investors at the time using an event study technique***. However, it is important to note that Plaintiffs claim that this disclosure was not entirely corrective of Defendants' alleged misrepresentations and omissions, as borne out by the additional information disclosed in the April 12, 2004 *Wall Street Journal* article about the Company, attached as exhibit H and discussed below.

Plaintiffs' Reply Suggestions in Further Support of Motion for Class Certification, Declaration of Michael A. Marek ("Marek Decl.") ¶ 76 (emphasis supplied, save that the word "settlement" was in bold italics in original).

Yet it is these very same intermediate Nevada disclosures to which plaintiffs now point in attempting to expand class membership. In short, plaintiffs want the intermediate Nevada disclosures to be revealing and "corrective" when it comes to class membership but immaterial and unimportant when it comes to the fundamentals of their case. The two positions stand in stark opposition.

Logic resolves this tension. If, as plaintiffs' expert correctly maintains, repeated news of the Nevada action was immaterial during the class period, it only makes sense that this news remained unimportant when repeated in the *WSJ* article and that it was other "news" in that article—news consisting in some half-dozen baseless insinuations and accusations regarding NovaStar's accounting practices and financial health—that caused the April 12, 2004 price decline.

## II. DISCUSSION

### A. The Class May Not Properly Include In-and-Out Traders.

Plaintiffs suggest that the Court should include in the putative class so-called "in-and-out traders"—that is, persons who purchased NovaStar shares and then sold them prior to the last day of the class period. They argue that certain partial disclosures of the truth occurred throughout the class period, that some in-and-out traders might have purchased shares before a corrective disclosure and then sold after that corrective disclosure, and that those in-and-out traders might therefore have suffered harm and should form a part of the class.

As an initial matter, this argument acknowledges that no class could properly include traders who "got out" (*i.e.*, sold their NovaStar shares) prior to the first of the alleged partial disclosures.[2] Plaintiffs have acknowledged that the first disclosure occurred on February 25, 2004 when the *Las Vegas Sun* published details of the Nevada action; all persons who sold prior to that date should be excluded from any class as a matter of course. *See, e.g., In re Cornerstone Propane Ptnrs. L.P. Sec. Litig.*, No C 03-2522 MHP, 2006 WL 1180267 *9 (N.D. Cal. May 3, 2006) (excluding from class in-and-out purchasers who sold prior to the first of three alleged partial disclosures).

In truth, other in-and-out traders can fare no better. It is true, as a conceptual matter, that disclosures during a class period may affect in-and-out traders and, in turn, that in-and-out traders may properly join the class of traders who held until that class period's end. This holds true, however, only when those intra-class-period disclosures caused the share price to ***decline***. It goes without saying that a trader who purchases shares at a price artificially inflated by a misrepresentation and who then witnesses a decline in share price when the truth is revealed

---

[2] The argument also requires that put sellers whose contracts matured or expired prior to the first of the alleged partial disclosures do not belong in the class.

might have suffered a loss. Indeed, this is so regardless whether disclosure of the truth comes in the middle or the end of a class period. But it also goes without saying that a trader who purchases shares at a price artificially inflated by a misrepresentation and who then witnesses ***an increase or no change*** in share price when the truth is revealed cannot have suffered a loss and cannot—under any theory—recover damages. Again, this is so regardless whether the truth is revealed during or at the end of a class period. The Supreme Court recognized these legal and logical imperatives when it wrote that "'artificially inflated purchase price' is not itself a relevant economic loss" and that a complaint failed to state a claim by not alleging that the defendant's "share price fell significantly after the truth became known." *Dura*, 544 U.S. 336, 347 (2005).

The lower courts have gone on to apply *Dura*'s teaching in "partial disclosure" and "in-and-out" cases. Taken together, these authorities make clear that intra-class-period disclosures will render in-and-out traders proper members of the class only where those disclosures caused a decrease in share price. *See, e.g., Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2nd Cir. 2005) (affirming trial court's dismissal and stating that plaintiffs failed to plead loss causation when they did not allege that "any corrective disclosure [was] the cause of the *decline* in stock value that plaintiffs claim as their loss") (emphasis in original); *Montoya v. Mamma.com, Inc.*, No. 05-CV-2313(HB), 2005 WL 1278097 *2 (S.D.N.Y May 31, 2005), (stating that "loss causation does not require *full* disclosure and can be established by *partial* disclosure during the class period ***which causes the price of shares to decline***") (italics in original; bold italics supplied); *In re Cornerstone Propane Ptnrs. L.P. Sec. Litig.*, No C 03-2522 MHP, 2006 WL 1180267 *9 (N.D. Cal. May 3, 2006) (in case involving three partial disclosures causing a *decline* in price, excluding from class in-and-out purchasers who sold prior to first disclosure); *In re NTL, Inc. Securities Litigation*, No. 02 Civ.3013 LAK AJP, 2006 WL 330113 *

9 (S.D.N.Y February 14, 2006) (stating with respect to loss causation and partial disclosures that "[b]ecause Lead Plaintiffs have made 'some showing' that these disclosing events slowly revealed the false information regarding NTL and have tied some if not all of the ***dissipation in the value of NTL stock*** to those events, they have adequately plead [sic] loss causation") (emphasis supplied); *In re Compuware Securities Litigation*, 386 F.Supp.2d 913, 920 (E.D. Mich. 2005) (finding loss causation not properly pled where plaintiffs "traded out of Defendants' stock long before the alleged inflated price began to leak out of Defendants' stock price").

These cases are consistent not only with *Dura* but also with the authorities cited by plaintiffs. *In re Priceline.com Inc. Securities Litigation*, 236 F.R.D. 89, 93 (D. Conn. 2006), for example, involved an intra-class-period partial disclosure upon which "the value of Priceline's stock plunged." *In re Bearingpoint, Inc. Securities Litigation*, 232 F.R.D. 534, 536-37 (E.D. Vir. 2006) discussed three corrective disclosures during the class period, the first two of which were followed by price declines. While neither *In re Marion Merrell Dow Inc. Securities Litigation*, No. 92-0609-CV-W-61994, WL 396190 (W.D. Mo. July 18, 1994) nor *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-CV-04617, 2006 WL 197036 *4 (S.D.N.Y. Jan. 25, 2006) contains factual discussion sufficient to determine whether partial disclosures led to a price decline, the latter does cite to *Dura* and *Lentell* for the proposition that those cases' "loss causation requirements do not require full disclosure and can be established by partial disclosure during the class period ***which causes the price of shares to decline***." To the extent they consider the point, then, plaintiffs' cases agree that an intermediate corrective disclosure will render in-and-out traders appropriate class members only where that disclosure is followed by a decline in share price.

Plaintiffs ***agree*** that none of the intermediate disclosures in this case—each of which

discussed the regulatory action in Nevada—led to any decrease in the price of NovaStar stock. In-and-out traders who sold prior to the only allegedly corrective disclosure that did involve a price decline—the *WSJ* article—cannot, by definition, have sustained any loss (much less one cognizable under *Dura*) and should have no place in the class.

Plaintiffs argue at page 3 of their brief that the question whether in-and-out traders have suffered a loss goes merely to the calculation of damages, something to be answered at a later stage in the proceedings. But as *Dura* instructs, this question is instead to be addressed at an even ***earlier*** stage—the pleading stage. *See Dura*, 544 U.S. at 347 (determining that a complaint must provide defendants with "notice of what the relevant economic loss might be" and what "the causal connection might be between that loss and the [defendants' alleged] misrepresentation"); *see also In re Cornerstone*, 2006 WL 1180267 *8 ("However, the issue of loss causation is not only relevant in determining the level of damages, but, pursuant to *Dura*, it is also relevant in establishing whether a securities fraud claim has been adequately pled.").

Plaintiffs have neither pled nor shown a price decline upon inter-class-period disclosures that would allow in-and-out traders to recover and, indeed, now concede through expert testimony that no such decline occurred. Unable to recover under any theory, the in-and-out plaintiffs can form no part of the putative class.

### B. Plaintiffs' Argument With Respect to Partial Disclosures Underscores the Frivolous Nature of This Suit.

Plaintiffs' bid to use early publications about the Nevada action to include in-and-out traders in the class underscores the indisputable poverty of this litigation. In debunking the claimed applicability of the fraud-on-the-market theory to this case, Defendants' certification briefing established that one of two things must necessarily be true: either the market for NovaStar shares during the class period was inefficient or NovaStar's alleged misrepresentations

regarding regulatory compliance were not material. *See, e.g., Cammer v. Bloom*, 711 F.Supp. 1264, 1287 (D.N.J. 1989) ("[A] a cause and effect relationship between unexpected [news] and an immediate response in the stock price . . . is the essence of an efficient market and the foundation for the fraud on the market theory."). Two facts were particularly important to that showing: first, that NovaStar's share price never increased following any allegedly false statements and, second, that NovaStar's share price never decreased when reports about the Nevada action were published on several occasions in the early and latter part of the class period. This lack of any price reaction to the alleged misrepresentations and to the earlier news reports necessarily means that the market either was indifferent to the alleged misrepresentations and reports or simply never heard about them (*i.e.*, the market was inefficient).

Plaintiffs' expert had to concede both that the misrepresentations caused no increase and that earlier reports concerning the Nevada action caused no decrease. Nonetheless determined to salvage plaintiffs' claim, he sought to explain how the absence of any price movement did not necessarily reflect market inefficiency. With respect to the lack of any price increase following the alleged misrepresentations, he argued that the market generally expects regulatory compliance, such that statements reassuring the market of compliance would cause no increase in price.[3] With regard to the lack of any price decrease following the publication of several articles about the Nevada action, he essentially agreed with defendants that that the news was unimportant to investors. He wrote that "one can conclude, at best for Defendants, that news of NovaStar's regulatory settlement . . . with the state of Nevada was not, on a stand-alone basis, deemed material by investors at the time . . . ." Marek Decl. ¶ 76. In short, he essentially agrees that the earlier disclosures of the Nevada action were immaterial.

---

[3] This argument is addressed in detail in Defendants' Motion for Reconsideration of Class-Certification Order.

Yet plaintiffs now point to these selfsame disclosures as ***the*** reason for including in-and-out traders, necessarily postulating that the disclosures somehow corrected the market. That is, they apparently regard the disclosures as material and "corrective" when determining who should be in the class but entirely immaterial and "non-corrective" when it comes to explaining the lack of any market reaction to them.

Common sense demands a more consistent view. Plaintiffs' expert has acknowledged that the market reacted with complete indifference to repeated news of the Nevada action. Logic holds that it remained indifferent when that same news found its way into the *WSJ* article and that it was, instead, other "news" in the article—insinuations and accusations of improper accounting, of inflated earnings statements and of a flawed business model—that caused investors to react and the price of NovaStar shares to decline. Because this false "news" does not and could not form any part of the complaint—plaintiffs cannot allege that NovaStar actually employed improper accounting methods or was in financial peril—plaintiffs simply have no legitimate claim.

## III. CONCLUSION

Because both sides agree that the intra-class-period partial disclosures at issue in this case occasioned no decrease in NovaStar share price, in-and-out traders cannot have suffered any loss and so have no proper place in any class. To the extent the Order survives defendants' motion for reconsideration and merits clarification, it should be augmented specifically to exclude in-and-out traders from class membership.

Dated: March 2, 2007.

Respectfully submitted,

/s/ Brian D. Martin

Michael Thompson MO #22153
Brian D. Martin MO #42245
Blackwell Sanders Peper Martin LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
PH: 816-983-8000
FX: 816-983-8080

- and –

William F. Alderman (*pro hac vice)*
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, California 94105
PH: 415-773-5700
FX: 415-773-5759

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which sent notification of such filing to the following:

R. Frederick Walters
Karen W. Renwick
Walters Bender Stohbehn & Vaughan, P.C.
25 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, Missouri 64196

I also certify that on March 2, 2007, I sent by U.S. Mail a copy of this document to the following non-CM/ECF participants:

Richard Weiss
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza, 49th Floor
New York, NY 10119

Vincent R. Cappucci
Steven D. Oestreich
Robert N. Cappucci
Entwistle & Cappucci LLP
299 Park Avenue, 14th Floor
New York, NY 10171

Attorneys for plaintiff

/s/ Brian D. Martin
Attorney