UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

IN RE NOVASTAR FINANCIAL, INC. )
SECURITIES LITIGATION ) Case No. 04-0330-CV-W-ODS
)
)

# PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION AND FINAL CERTIFICATION OF THE CLASS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**WALTERS BENDER STROHBEHN & VAUGHAN, P.C.**
R. Frederick Walters (Mo. Bar # 25069)
Karen W. Renwick (Mo. Bar # 41271)
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, Missouri 64196
Tel: (816) 421-6620
Fax: (816) 421-4747

*Liaison Counsel for Plaintiffs*

| | |
|---|---|
| **ENTWISTLE & CAPPUCCI LLP** | **MILBERG LLP** |
| Vincent R. Cappucci | Richard H. Weiss |
| 280 Park Avenue, 26th Floor West | One Pennsylvania Plaza |
| New York, New York 10017 | New York, New York 10119 |
| Tel: (212) 894-7200 | Tel: (212) 594-5300 |
| Fax: (212) 894-7272 | Fax: (212) 868-1229 |

*Co-Lead Counsel for Plaintiffs*

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| I. | ARGUMENT | 3 |
| | A. Standard For Reviewing A Proposed Settlement | 3 |
| | B. The Settlement Is Fair, Reasonable And Adequate | 4 |
| |     1. Defendants' Financial Condition And Ability To Satisfy A Judgment | 5 |
| |     2. The Potential Relief That Plaintiffs May Realize After A Full Trial On The Merits Balanced Against The Relief Offered By The Settlement | 6 |
| |         a. The Risks Of Establishing Liability | 6 |
| |         b. The Risks Of Establishing Loss Causation And Damages | 7 |
| |     3. The Complexity, Expense And Likely Duration Of The Litigation | 8 |
| |     4. Status Of The Proceedings And The Amount Of Discovery Completed | 9 |
| |     5. The Lack Of Objections To The Settlement By Class Members | 10 |
| |     6. The Nature Of The Settlement Negotiations And The Opinion Of Experienced Co-Lead Counsel | 11 |
| |     7. The Public Interest | 13 |
| II. | THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE | 13 |
| III. | THE PLAN OF ALLOCATION TREATS LEAD PLAINTIFFS AND THE CLASS FAIRLY AND EQUITABLY | 14 |
| IV. | CERTIFICATION OF A CLASS IS APPROPRIATE | 14 |
| V. | CONCLUSION | 15 |

## TABLE OF AUTHORITIES

### CASES

*In re AT&T Corp. Securities Litigation,*
   455 F.3d 160 (3rd Cir. 2006) ............................................................................................. 7

*In re BankAmerica Corp. Securities Litigation,*
   210 F.R.D. 694 (E.D. Mo. 2002) .................................................................................*passim*

*Brailsford v. Jackson Hewitt, Inc.,*
   No. C 06-00700 CW,
   2007 U.S. Dist. LEXIS 35509 (N.D. Cal. May 3, 2007) ............................................... 11

*In re Cardizem CD Antitrust Litigation,*
   218 F.R.D. 508 (E.D. Mich. 2003) ............................................................................ 10, 13

*In re Charter Communications, Inc., Securities Litigation,*
   Nos. MDL 1506, 4:02-CV-1186 CAS,
   2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ............................................. 14

*In re Currency Conversion Fee Antitrust Litigation,*
   MDL No. 1409, 2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006) ..................... 11

*Daubert v. Merrell Dow Pharmaceutical, Inc.,*
   509 U.S. 579 (1993) ........................................................................................................ 7

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ........................................................................................... 8

*In re Employee Benefit Plans Securities Litigation,*
   No. 3-92-708, 1993 U.S. Dist. LEXIS 21226 (D. Minn. June 2, 1993) .................*passim*

*In re Engineering Animation Securities Litigation,*
   203 F.R.D. 417 (S.D. Iowa 2001) ........................................................................... 3, 4, 10

*Grove v. Principal Mutual Life Insurance Company,*
   200 F.R.D. 434 (S.D. Iowa 2001) ................................................................................... 9

*In re Gulf Oil/Cities Services Tender Offer Litigation,*
   142 F.R.D. 588 (S.D.N.Y. 1992) ................................................................................... 14

*In re IBP, Inc. Securities Litigation,*
   328 F. Supp. 2d 1056 (D.S.D. 2004) .........................................................................*passim*

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................. 10

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ............................................................................ 9, 13

*Newman v. Caribiner International Inc.*,
   No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) .................................................................. 8

*In re PNC Finance Service Group, Inc. Securities Litigation*,
   440 F. Supp. 2d 421 (W.D. Pa. 2006) ............................................................................ 8

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ........................................................................................ 3

*Streber v. Hunter*,
   221 F.3d 701 (5th Cir. 2000) .......................................................................................... 7

*TSC Industrial v. Northway, Inc.*,
   426 U.S. 438 (1976) ....................................................................................................... 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007) ................................................................................................... 6

*White v. NFL*,
   822 F. Supp. 1389 (D. Minn. 1993) ............................................................................. 14

*In re Wireless Telephone Cost Recovery Fees Litigation*,
   No. 02-921-FJG, 2004 U.S. Dist. LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ........... 4, 13

**FEDERAL STATUTES**

Fed. R. Civ. P. 23 ................................................................................................................ 13

*Newberg & Conte*, § 11.51 ................................................................................................ 11

Pursuant to Federal Rule of Civil Procedure 23(e), Lead Plaintiffs Generic Trading of Philadelphia, LLC ("Generic") and Harrold Daniels, by and through their counsel ("Co-Lead Counsel"), respectfully submit this memorandum of law in support of final approval of a proposed settlement (the "Settlement") of this consolidated class action (the "Action"). The Settlement resolves all of the claims against the Defendants in the Action.[1] Lead Plaintiffs also submit this memorandum of law in support of the proposed plan of allocation of the Settlement proceeds (the "Plan of Allocation") and final certification of the Class[2] in this Action.

On December 8, 2008, the parties signed the Stipulation and Agreement of Settlement. Pursuant to the proposed Settlement, a cash settlement fund of $7,250,000 plus interest has been established for the benefit of the Class. On December 15, 2008, this Court signed the Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings, which preliminarily approved the Settlement.

As set forth more fully in the Joint Declaration of Co-Lead Counsel, this Settlement is the

---

[1] Defendants are NovaStar Financial, Inc. ("NovaStar") and Scott F. Hartman, W. Lance Anderson and Rodney E. Schwatken (the "Individual Defendants"). NovaStar and the Individual Defendants are collectively referred to herein as the "Defendants."

[2] The Class is defined as: all persons who EITHER (1) purchased or otherwise acquired common stock of NovaStar during the period from October 29, 2003 through April 8, 2004, inclusive (the "Class Period") and still held shares of stock as of April 8, 2004, OR (2) sold NovaStar put options during the Class Period whose option extended beyond, and was exercised after, April 8, 2004, AND (3) as a result of NovaStar's actions, suffered damages. Excluded from the Class are the Defendants; the subsidiaries and affiliates of NovaStar; the officers and directors of NovaStar or its subsidiaries and affiliates, at all relevant times; members of the immediate family of any excluded person; the legal representatives, heirs, successors, and assigns of any excluded person; and any entity in which any excluded person has or had a controlling interest. *See* Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings ("Preliminary Approval Order"), dated December 15, 2008 ¶ 1; *see also* Affidavit of Richard W. Simmons of Analytics, Inc. Re: (A) Mailing of the Notice and the Proof of Claim; and (B) Report on Exclusion Requests Received (the "Simmons Affidavit" or "Simmons Aff.") (listing exclusions).

product of nearly five years of hard-fought litigation.[3] The Settlement was negotiated by counsel for Plaintiffs and for Defendants, who have extensive experience and expertise in litigating and resolving complex class actions similar to this Action and who possess a firm understanding of the parties' respective claims and defenses. While Co-Lead Counsel are confident in the merits of Plaintiffs' claims, serious disputes between the parties exist with respect to such significant issues as materiality, scienter, causation, and damages. NovaStar's significantly deteriorated financial condition posed additional challenges. The Settlement takes into account these, and other risks and uncertainties described more fully below, as well as the expense and delay of continuing this litigation through summary judgment, trial and a probable appeal, and the likelihood of obtaining and recovering a larger judgment after trial. This Settlement also reflects a careful and thorough analysis by Co-Lead Counsel of the pertinent facts and law.

The negotiations that resulted in the Settlement now before the Court were protracted and difficult, and included two formal mediation sessions with the active assistance of a highly respected, independent mediator, former Chief Magistrate Judge of the United States District Court, Northern District of California, Edward A. Infante, of Judicial Arbitration and Mediation Services ("JAMS"). Pursuant to the Court's Preliminary Approval Order, the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Notice") was duly mailed to more than 33,500 potential Class Members (Simmons Aff., ¶ 13) and, on January 14, 2009, a Summary Notice was published in the national edition of *The Wall Street Journal* and transmitted over the National Circuit of *Business Wire*.

---

[3] For a fuller discussion of the background of the litigation, the Court is respectfully referred to the Joint Declaration of Co-Lead Counsel in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation and Final Certification of the Class and Co-Lead Counsel's Petition for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Joint Declaration").

Affidavit of Paul J. Andrejkovics RE: Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing ("Andrejkovics Aff."), ¶ 2. Only a single objection from an individual (*i.e.*, non-institutional) Class Member has been received, demonstrating, essentially, unanimous approval of the Settlement from the Class.

Co-Lead Counsel firmly believe the Settlement is an excellent recovery for the Class, under all the relevant circumstances, and, in particular, the uncertainty as to Defendants' ability to satisfy a larger judgment and the possibility of bankruptcy and the complications that would raise. Accordingly, for the reasons stated herein and in the Joint Declaration, Lead Plaintiffs and Co-Lead Counsel respectfully submit this Settlement is fair, reasonable and adequate and in the best interests of the Class and merits final approval by the Court.

**I.    ARGUMENT**

    **A.    Standard For Reviewing A Proposed Settlement**

The Court must find the proposed Settlement to be "fair, reasonable, and adequate." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1062 (D.S.D. 2004). In applying this standard, the Court must weigh the "plaintiff's likelihood of success on the merits against the amount and form of relief in the settlement." *Petrovic*, 200 F.3d at 1150; *IBP*, 328 F. Supp. 2d at 1062 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002) (same). In weighing the benefits of settlement against the benefits that might possibly be obtained by proceeding with the litigation, the court "should not substitute [its] own judgment as to optimal settlement terms to the judgment of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49; *In re Engineering Animation Sec. Litig.*, 203 F.R.D. 417, 422 (S.D. Iowa 2001) (same); *In re Employee Benefit Plans Sec. Litig.*, No. 3-92-708, 1993 U.S. Dist. LEXIS 21226, at *13 (D. Minn. June 2, 1993) (same). The Eighth Circuit

3

has held consistently that "'[a] strong public policy favors agreements, and courts should approach them with a presumption in their favor.'" *IBP*, 328 F. Supp. 2d at 1063-64 (*quoting Petrovic*, 200 F.3d at 1148); *In re Wireless Tel. Cost Recovery Fees Litig.*, No. 02-921-FJG, 2004 U.S. Dist. LEXIS 23342, at * 24-25 (W.D. Mo. Apr. 20, 2004) (same).

Based on Co-Lead Counsel's considerable experience in similar cases and their understanding of the facts and risks presented in this case, it is Co-Lead Counsel's judgment that, when examined under the applicable criteria, this Settlement is a good result for the Class, particularly in light of the risks of continuing to litigate this case and, in particular, the uncertainties related to NovaStar's difficult financial situation. The Settlement achieves a prompt and substantial recovery for the Class in a factually and legally complex case, without further risk, expense, or delay, and is unquestionably superior to another possibility, which would have existed if the litigation continued: no recovery at all.

### B. The Settlement Is Fair, Reasonable And Adequate

In assessing a proposed settlement, courts this Circuit consider the following factors:

(1) the defendants' overall financial condition and ability to pay;

(2) the potential relief that plaintiffs may realize following a full trial on the merits balanced against the relief offered by the settlement;

(3) the complexity and expense and likely duration of the litigation;

(4) the extent of discovery completed;

(5) the amount of opposition to the settlement;

(6) the nature of the settlement negotiations and the judgment of experienced trial counsel; and

(7) the public interest.

*See Engineering Animation*, 203 F.R.D. at 422; *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *12; *IBP*, 328 F. Supp. 2d at 1063-64. Each of these factors weights in favor of

approval of the Settlement.

### 1. Defendants' Financial Condition And Ability To Satisfy A Judgment

The Settlement affords Class Members the benefit of an immediate $7,250,000 all-cash recovery. If Class Members were to proceed with the litigation, one of the most serious risks they would face, even assuming Plaintiffs eventually won at trial and on appeal, is whether Defendants would be able to satisfy any future judgment in light of NovaStar's significantly deteriorated financial situation. A possible bankruptcy would introduce further complications and obstacles. As the Joint Declaration details, NovaStar was forced to exit its subprime loan origination business in 2007 when the mortgage and credit markets began to collapse. Since then, the Company's financial condition has progressively worsened to the point where NovaStar has lost most of its market capitalization and the Company's stock, delisted by the New York Stock Exchange in 2008, currently trades at less than $1.00 per share. Most recently, on March 25, 2009, the Company announced that its preferred stockholders have the right to nominate two members to NovaStar's Board of Directors as a result of the Company being in arrears for five quarters on the payment of preferred dividends.

The Company's restated Form 10-Q for the quarter-ended June 30, 2008, filed on March 30, 2009,[4] expressly warned investors: ***"There are substantial doubts that the Company will be able to continue as a going concern and, therefore, may be unable to realize its assets and discharge its liabilities in the normal course of business."*** (Emphasis added.) Were NovaStar to be forced into bankruptcy, voluntarily or involuntarily, the bankruptcy laws would halt any

---

[4] According to NovaStar's Second Quarter 2008 Form 10-Q, the Company restated its financial results, among other things, to increase its provision for credit losses and write-down the fair value of certain trading securities and asset-backed bonds.

further litigation against NovaStar and likely make it difficult for Plaintiffs to continue the litigation against even the Individual Defendants. Collection of a judgment, if any, would be highly questionable and likely not occur for years while the bankruptcy court sorted out the priority of creditors' claims and other issues.

In light of the foregoing, as well as the continued distress of the credit markets, there is little reason to expect NovaStar's financial condition to improve in the future. The only aspect of NovaStar's business that remains is its loan servicing portfolio. Accordingly, this factor weighs very heavily in favor of approving the Settlement.

### 2. The Potential Relief That Plaintiffs May Realize After A Full Trial On The Merits Balanced Against The Relief Offered By The Settlement

If Class Members were to proceed with the litigation, they would risk failing to establish liability, causation and damages at the summary judgment, trial, and appeal stages of the litigation.

#### a. The Risks Of Establishing Liability

Plaintiffs risk being unable to prove, *inter alia*, that Defendants made misstatements, that those misstatements were material (*TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)), and were made with scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2507 (2007). It is uncertain the Class could eventually obtain any recovery -- let alone a recovery greater than the amount recovered here (also taking into account the time value of money). Even assuming, arguendo, Plaintiffs could prove Defendants did not fully disclose the true nature of NovaStar's regulatory violations, Defendants had potentially viable defenses, including that Defendants were not aware of the Company's regulatory violations that were occurring at its branch offices, that any regulatory issues and their impact on NovaStar were immaterial, and that Defendants acted reasonably when they became aware of the regulatory violations.

6

### b. The Risks Of Establishing Loss Causation And Damages

Plaintiffs would have faced serious challenges at trial proving Defendants' alleged misconduct caused compensable damages. Specifically, Defendants would argue that the fines NovaStar paid in connection with its regulatory violations did not affect the Company's financial results and, thus, were not material. Defendants also would argue that any trading losses the Class suffered did not relate to issues challenged as fraudulent in the Action and, thus, are not recoverable. In addition, the parties would submit extensive expert analyses that would inevitably disagree on key causation and damages issues including: (i) the appropriate economic model for measuring damages; (ii) the amount by which NovaStar's securities were inflated (if at all) during the Class Period; and (iii) the amount of the price drop upon the disclosure of the truth that actually related to the alleged fraud, if any.

While Co-Lead Counsel believe there exists a firm basis for an expert to opine on the measure and amount of damages, substantial obstacles, in addition to the questions raised above, still remain. First, the Court must determine that Plaintiffs' damages model is admissible. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Only then may a jury determine whether Plaintiffs' or Defendants' model is more persuasive. However, one cannot predict how a jury will weigh competing experts' testimony and, thus, the crucial element of damages likely would be reduced at trial to a "battle of the experts," the outcome of which would be highly uncertain. *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Miss. 2002); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 167 (3rd Cir. 2006); *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000).

Estimates of the Class's losses range as high as $100 million, or more. However, in addition to all the risks and challenges of proving liability, damages, and causation in this case,

7

Plaintiffs also were very mindful of NovaStar's severe financial distress, including the possibility of bankruptcy, voluntary or involuntary. Plaintiffs and their Counsel had to consider that, even if, possibly years from now, Plaintiffs could eventually prevail on the merits, after dispositive motions, trial and appeals, there is serious reason to doubt they could ever collect any judgment more substantial than the immediate $7.25 million cash recovery the Settlement provides. Continued litigation might cost the Class the opportunity to recover even that much. "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not . . . mean that the proposed settlement is grossly inadequate and should be disapproved." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974); *see also Newman v. Caribiner Int'l Inc.*, No. 99 Civ. 2271 (S.D.N.Y. Oct. 19, 2001) (approving settlement that recovered only $ 0.12 on the dollar); *In re PNC Fin. Serv. Group, Inc. Sec. Litig.*, 440 F. Supp. 2d 421, 435-.6 (W.D. Pa. 2006) (approving settlement of 2.4% of total estimated damages). Given NovaStar's dire financial condition and the other risks and uncertainties of continuing this litigation, Co-Lead believe the Settlement is a good recovery for the Class.

### 3. The Complexity, Expense And Likely Duration Of The Litigation

As the Joint Declaration sets forth in greater detail, this was a difficult and complex case that was vigorously litigated for nearly five years. To continue to prosecute this case through summary judgment, trial, and appeals would require substantial additional commitments of time and resources. A trial would entail months of preparation and litigation, vigorously contested motions, and the expenditure of tens, if not hundreds, of thousands of dollars in additional out-of-pocket expert fees and other costs with no guarantee the Class would obtain any more favorable result than the immediate recovery the proposed Settlement provides. Even if the Class could eventually recover a larger judgment after trial, given the time value of money, such

8

a recovery years in the future might well be less beneficial than the immediate benefits the proposed Settlement provides.[5] Thus, the risk of not obtaining a larger recovery would be substantial, particularly since a securities class action case such as this one is by its very nature, difficult and uncertain.

Accordingly, this factor also weighs in favor of approving the Settlement. *Employee Benefit Plans*, 1993 U.S. Dis. LEXIS 2126, at *16 ("Avoiding 'costs' of litigation also supports approving the settlement."); *New England Health Care Emples. Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006) (noting that securities class action cases are "difficult and . . . uncertain.").

### 4. Status Of The Proceedings And The Amount Of Discovery Completed

"[T]he extent of discovery completed and the stage of the proceedings are important factors to consider because they are indicative of counsel's and the Court's ability to evaluate the merits of the plaintiffs' claims." *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *19. Here, Co-Lead Counsel conducted a wide-ranging investigation of the facts underlying Plaintiffs' claims; prepared a highly particularized Complaint; successfully defeated Defendants' motion to dismiss; engaged in extensive briefing on Plaintiffs' motion for class certification, which required Co-Lead Counsel to work with an experienced financial analyst and then to fight an appeal to the Eighth Circuit; engaged in intensive fact discovery, including the review and analysis of more than 130,000 pages of documents obtained from Defendants and third parties;

---

[5] Moreover, any future jury verdict would still be subject to the continuing risks of litigation through post-trial motions and inevitable appeals. Even a very large judgment, recovered after lengthy litigation and trial can be completely lost on appeal. *See Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001) (noting that, although "there appears to be a strong case on the merits" that "trying this case is fraught with danger" where plaintiffs could lose on summary judgment or at trial).

and drafted a detailed mediation statement. When the parties agreed to this Settlement, Co-Lead Counsel were actively preparing to take depositions. Thus, Co-Lead Counsel had reached a stage in the proceedings where they clearly could make a determination that the Settlement provides a good recovery for the Class, under all the relevant circumstances, and that the risks, expense, and delay of moving forward outweigh the chance of obtaining a larger recovery.

### 5. The Lack Of Objections To The Settlement By Class Members

The deadline for submitting exclusion requests or objections passed on March 9, 2009, and only two requests for exclusion[6] and only one objection to the Settlement were received. More than 33,500 Notices were disseminated to potential Class Members. Simmons Aff., ¶¶ 13, 22. The Notice described the litigation, the significant terms of the Settlement, and Class Members' rights to opt out or object. The "overwhelming positive Class response to the Proposed Settlement" "weighs heavily in favor of approval." *Engineering Animation*, 203 F.R.D. at 422 (finding objections by two individual class members represented "minimal opposition to this settlement").[7] It also is significant that the objection was made by an individual Class Member and that no institutional investor has objected. *BankAmerica*, 210 F.R.D. at 702-03.

The sole objector, while "commend[ing] the Plaintiff and their attorney's for bringing this proper and timely Class Action," complains that the $7.25 million cash settlement is

---

[6] From the information provided, it appears the persons seeking exclusion are not Class Members. One bought NovaStar shares before, not during, the Class Period. The second exclusion request comes from two persons who bought NovaStar shares during the Class Period but, having soon sold them (at a profit), did not hold the shares at the end of the Class Period.

[7] Indeed, a "certain number of opt-outs and objections are to be expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998)).

10

"completely inadequate" compared to the magnitude of the wrongdoing. Co-Lead Counsel do not disagree that the Class should be fully compensated for their losses. Yet, the Objector fails to take proper account of the limitations Plaintiffs confronted in trying to obtain a greater recovery here or of the serious risks of continuing to prosecute this case, possibly for years, including the risk of bankruptcy and the further complications and obstacles that would introduce. In addition, the Objector mistakenly assumes that Plaintiffs in this securities case can recover from the Individual Defendants for "running NovaStar into the ground" through their purported negligence, including that loan underwriting standards were "virtually non-existent" -- matters that go well beyond the scope of this litigation. In any event, the Objector could have opted out of the Settlement but has chosen instead to participate.

### 6. The Nature Of The Settlement Negotiations And The Opinion Of Experienced Co-Lead Counsel

This Settlement is the result of months of difficult, adversarial, arm's-length negotiations between highly experienced Counsel and with the assistance of a highly-respected, independent mediator. There was no collusion here. *IBP*, 328 F. Supp. 2d at 1063-64 (finding "'[a] strong public policy favors agreements, and courts should approach them with a presumption in their favor'") (*quoting Petrovic*, 200 F.3d at 1148); *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *13 (same); *see also Newberg & Conte, supra*, § 11.51.

Moreover, that the parties were actively assisted during the Settlement negotiations by former Magistrate Judge Edward A. Infante, a highly-experienced mediator, further demonstrates that the Settlement is fair and reasonable. *See, e.g., Brailsford v. Jackson Hewitt, Inc.*, No. C 06-00700 CW, 2007 U.S. Dist. LEXIS 35509, at *12 (N.D. Cal. May 3, 2007) (approving settlement, which included "the recommendation and experience of the mediator, Judge Infante"); *In re Currency Conversion Fee Antitrust Litig.*, MDL No. 1409, 2006 U.S. Dist.

11

LEXIS 81440, at *14-15 (S.D.N.Y. Nov. 8, 2006) (finding "Judge Infante's participation in the negotiations substantiates the parties' claim that the negotiations took place at arm's length"); *IBP*, 328 F. Supp. 2d at 1064 (finding arm's-length negotiations before experienced mediator demonstrated settlement negotiations were in good faith).

In addition, a court "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached at arms-length negotiations between experienced, capable counsel after meaningful discovery." *BankAmerica*, 210 F.R.D. at 700 (citing Fed. Judicial Ctr., Manual for Complex Litig. § 30.423 at 240 (3d.ed. 1997)). Where, as here, experienced counsel have negotiated a settlement at arm's-length, the attorneys' opinion should be accorded significant weight and a strong initial presumption is created that the compromise is fair and reasonable. *Employee Benefit Plans*, 1993 U.S. Dist. LEXIS 21226, at *17; *IBP*, 328 F. Supp. 2d at 1064.

The presumption applies with special force here because the Settlement was reached by experienced, fully-informed counsel after the parties had engaged in protracted and intense arm's length negotiations over many months. Co-Lead Counsel -- Entwistle & Cappucci LLP and Milberg LLP -- are nationally recognized members of the plaintiffs' bar, specializing in complex class litigation. Plaintiffs' liaison counsel, Walters Bender Strohbehn & Vaughn, P.C., also are very experienced handling complex litigation on behalf of injured persons. Counsel for Defendants -- Blackwell Sanders LLP and Orrick, Herrington & Sutcliffe, LLP -- are two of the nation's most prominent law firms. Thus, counsel on both sides have the experience, skill, and knowledge to assess the merits of the Action and to make an informed recommendation regarding the wisdom and fairness of the Settlement. Co-Lead Counsel are satisfied that, under

12

Case 4:04-cv-00330-ODS   Document 256   Filed 04/07/09   Page 16 of 20

the circumstances, the Settlement is a very favorable resolution of this litigation and, accordingly, this factor weighs in favor of Settlement.

### 7. The Public Interest

"[S]trong public policy favors agreements, and courts should approach them with a presumption in their favor." *IBP*, 328 F. Supp. 2d at 1063-64 (citing *Petrovic*, 200 F.3d at 1148). Settlement serves the public interest "since recovery has been obtained by a large number of class members in the investing public." *New England Health Care*, 234 F.R.D. at 632. Moreover, "settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). Here, the $7,250,000 all-cash Settlement will save the Court from expending resources on lengthy summary judgment proceedings, likely involving a host of issues, and a possible trial that cannot guarantee any recovery for the investing public. Moreover, the Settlement may well be the only opportunity Class Members will have to obtain any recovery in light of NovaStar's precarious financial condition.

## II. THE NOTICE PROGRAM MEETS THE REQUIREMENTS OF DUE PROCESS AND RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 23(c)(2)(B) requires that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Such notice need only be sufficient to satisfy due process and be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Wireless Tel.*, 2004 U.S. Dist. LEXIS 23342, at * 24-25; *see also Grunin*, 513 F.2d at 122.

The extensive notice program completed here is consistent with the Court-approved notice procedures set forth in the Court's Order dated December 15, 2008. The program

13

complies with the requirements of Federal Rule of Civil Procedure Rule 23 and due process and is similar to the procedures approved in many other cases. *See also, e.g., White v. NFL*, 822 F. Supp. 1389, 1400 (D. Minn. 1993) (notice by mail to identified class members and publication once in *USA Today* "clearly satisfy both Rule 23 and due process requirements").

### III. THE PLAN OF ALLOCATION TREATS LEAD PLAINTIFFS AND THE CLASS FAIRLY AND EQUITABLY

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is governed by the same standard of review applicable to the settlement as a whole -- the plan must be fair, reasonable and adequate. *See Charter Commc'ns.*, Nos. MDL 1506, 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, at *34 (E.D. Mo. June 30, 2005) (citing *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

For the reasons stated more fully in the Joint Declaration, Lead Plaintiffs respectfully submit that the Plan of Allocation of the Settlement Fund (fully described in the Notice) should be approved as it provides a fair, equitable, and efficient method to distribute the Net Settlement Fund among Class Members who submit valid claims.

### IV. CERTIFICATION OF A CLASS IS APPROPRIATE

As discussed in the Joint Declaration, this Court already has certified a Class in this case, after extensive briefing and expert submissions. Thus, Lead Plaintiffs respectfully request that the Court now grant final certification of the Class.

## V. CONCLUSION

The Settlement and Plan of Allocation are fair, reasonable and adequate, comport with all requirements of due process, and satisfy Rule 23 and the Private Securities Litigation Reform Act of 1995. Accordingly, Co-Lead Counsel respectfully request that the Settlement and Plan of Allocation be approved in their entirety and that the Class be finally certified.

Dated: April 7, 2009

Respectfully submitted,

**WALTERS BENDER STROHBEHN & VAUGHAN, P.C.**

By: /s/ R. Frederick Walters
R. Frederick Walters (MO#25069)
fwalters@wbsvlaw.com
Karen W. Renwick (MO#41271)
krenwick@wbsvlaw.com
2500 City Center Square
1100 Main Street
P.O. Box 26188
Kansas City, Missouri 64196
Telephone: (816) 421-6620
Facsimile: (816) 421-4747

*Liaison Counsel for Plaintiffs*

**MILBERG LLP**
Richard H. Weiss
rweiss@milberg.com
One Pennsylvania Plaza
New York, New York 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Co-Lead Counsel for Plaintiffs*

ENTWISTLE & CAPPUCCI LLP
Vincent R. Cappucci
vcappucci@entwistle-law.com
280 Park Avenue
26th Floor West
New York, New York 10017
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

*Co-Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this document was filed electronically with the United States District Court for the Western District of Missouri, Western Division, with notice of case activity to be generated and sent electronically by the Clerk of the Court to all designated persons on the 7th day of April, 2009, and a copy mailed by United States mail, first-class postage prepaid, addressed to the following individuals who are not designated to receive ECF notice from the Court:

[none]

/s/ R. Frederick Walters